*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
November 22, 2022

Plaintiff-Appellee,

v

Nos. 353531; 354946
Genesee Circuit Court
LC Nos. 19-044736-FC;
          19-044737-FC

TERON DARNELL JOHNSON,

Defendant-Appellant.

Before: RIORDAN, P.J., and BOONSTRA and GADOLA, JJ.

PER CURIAM.

In Docket No. 353531, defendant appeals as of right his conviction and sentence in LC No. 19-044737-FC for aggravated domestic assault, MCL 750.81(a)(2), for which he was sentenced to 365 days in jail, with credit for 365 days served. In Docket No. 354946, defendant appeals as of right his convictions and sentences in LC No. 19-044736-FC for assault with intent to do great bodily harm, MCL 750.84; first-degree home invasion, MCL 750.110a(2); discharging a firearm in a dwelling, MCL 750.234b; felon in possession of a firearm, MCL 750.224f; felon in possession of ammunition, MCL 750.224f(6); five counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, with regard to the predicate felonies previously listed; and carrying a concealed weapon, MCL 750.227.

Defendant was sentenced in that case as a fourth habitual offender, MCL 769.12, to the following terms of imprisonment: assault with intent to do great bodily harm, 25 to 50 years; first-degree home invasion, 15 to 25 years; discharging a firearm in a dwelling, 2 to 10 years; felon in possession of a firearm, 2 to 5 years; felon in possession of ammunition, 2 to 5 years; carrying a concealed weapon, 2 to 5 years; and 2 years for each of the felony-firearm charges. The felony-firearm charges were to be served concurrently with each other but consecutively with the remaining charges, which were to be served concurrently themselves. We affirm.

## I. THE APPEAL

### A. PRELIMINARY EXAMINATION TESTIMONY

-1-

Defendant argues that the trial court violated both MRE 804 and the Confrontation Clause by declaring Michael Mack unavailable and reading his preliminary examination transcript to the jury. Defendant alternatively argues that if these two arguments are unpreserved, then defense counsel was ineffective.[1] We disagree.

Ordinarily, "[t]his Court reviews a trial court's evidentiary ruling for an abuse of discretion." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "Preliminary issues of law, including the interpretation of the rules of evidence and the effect of constitutional provisions, are reviewed de novo." *Id*. "The constitutional question whether defendant was denied [the] constitutional right to confront the witnesses against [him] is reviewed de novo." *Id*.

Unpreserved issues are reviewed for plain error. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

This Court reviews a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Rogers*, 335 Mich App 172, 191; 966 NW2d 181 (2020).

"A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010) (quotation marks and citation omitted).

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him[.]" US Const, Am VI; see also Const 1963, art 1, § 20. Under the Confrontation Clause, "[t]estimonial statements of witnesses absent from trial [may be] admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). Statements made during a preliminary examination are testimonial. *Id*. at 68. "[W]hile cross-examination before trial may not be as searching as cross-examination at trial, prior testimony is nevertheless admissible so long as the defendant was not significantly limited in his cross-examination." *United States v Mallory*, 902 F3d 584, 591 (CA 6, 2018) (quotation marks and citation omitted). Thus, "the Confrontation Clause is generally satisfied when the defense is

---

[1] An issue concerning the admission of evidence is preserved if "a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context." MRE 103(a)(1). An issue concerning the Confrontation Clause is preserved if the defendant objects to admission of the evidence on that basis. See *People v Benton*, 294 Mich App 191, 202; 817 NW2d 599 (2011). In this case, defendant made a general objection at trial. Because there are two apparent grounds for such an objection—either MRE 804 or the Confrontation Clause—and defendant did not specify either one—we conclude that the two arguments here are unpreserved.

given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony." *Delaware v Fensterer*, 474 US 15, 22; 106 S Ct 292; 88 L Ed 2d 15 (1985).

MRE 801(c) defines "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible at trial. See MRE 802. However, MRE 804(b)(1) provides that "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" is admissible "if the declarant is unavailable as a witness." MRE 804(a)(2) provides that "unavailability" includes a situation in which the declarant "persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the court to do so." Further, in *People v Farquharson*, 274 Mich App 268; 731 NW2d 797 (2007), this Court set forth the following three-factor test to determine whether a party had a "similar motive to develop the testimony" for the purposes of MRE 804(b)(1):

> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id*. at 278 (quotation marks and citations omitted).]

Here, admission of Mack's preliminary examination testimony did not violate the Confrontation Clause or MRE 804(b)(1). As to the Confrontation Clause, defendant concedes on page seven of his brief on appeal that "Mr. Mack was unavailable at trial because he refused to testify and was held in contempt." The question therefore becomes whether defendant had a prior opportunity to cross-examine Mack and was not "significantly limited" in that regard. See *Mallory*, 902 F3d at 591.

The record indicates that defendant did have an opportunity to cross-examine Mack. That preliminary examination was not unduly limited in scope, and defense counsel was able to cross-examine Mack regarding his credibility and the elements of the charged offenses. For example, defense counsel was able to have Mack admit that he did not actually see the gun that was used to shoot him. As a general rule, this Court has previously concluded that preliminary examination testimony is admissible without violating the Confrontation Clause, so long as the declarant is otherwise unavailable. See, e.g., *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). Federal courts have done so as well in the context of grand jury proceedings. See, e.g., *United States v Shaffers*, 22 F4th 655, 661 (CA 7, 2022). Thus, Mack's preliminary examination testimony was presumptively admissible under the Confrontation Clause, and there is nothing particular about this case that would warrant a different conclusion.

Defendant, of course, argues otherwise, citing U.S. Supreme Court Justice Brennan's dissent in *California v Green*, 399 US 149; 90 S Ct 1930; 26 L Ed 2d 489 (1970), in which Justice Brennan asserted that "the purposes of the Confrontation Clause cannot be satisfied by a face-to-

face encounter at the preliminary hearing" because "the objective of the hearing is to establish the presence or absence of probable cause, not guilt or innocence proved beyond a reasonable doubt," "neither defense nor prosecution is eager before trial to disclose its case by extensive examination at the preliminary hearing," and "lost in a cold reading of the preliminary transcript is the more subtle yet undeniable effect of counsel's rhetorical style, his pauses for emphasis and his variations in tone, as well as his personal rapport with the jurors." *Id*. at 195-197 (Brennan, J., *dissenting*) (cleaned up). However, this reasoning was rejected by the majority in the case's holding, which concluded that the Confrontation Clause was not violated by admission of the declarant's preliminary examination testimony. *Id*. at 164 (majority opinion). The majority noted, for example, that the declarant "was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine [the declarant] as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings." *Id*. at 165. In light of the majority opinion in *Green*, as well as more recent decisions allowing admission of preliminary examination testimony under the Confrontation Clause, we reject defendant's argument that such testimony is either *per se* inadmissible or was inadmissible in this case.

With regard to MRE 804(b)(1), as noted, defendant concedes on appeal that Mack was "unavailable" at trial.[2] The question is whether defendant had a "similar motive to develop the testimony by direct, cross, or redirect examination" under MRE 804(b)(1). To answer that question, we must consider the three *Farquharson* factors.

These factors weigh in favor of a conclusion that Mack's preliminary examination testimony was admissible. Concerning the first factor, whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue, defendant had a similar interest in discrediting Mack at the preliminary examination as he did at trial. If Mack's testimony was discredited at the preliminary examination, then the charges against defendant arising from that testimony would be more likely to be dismissed by the district court than if it was not discredited. See *People v Johnson*, 427 Mich 98, 104-105; 398 NW2d 219 (1986) (explaining that the purpose of a preliminary examination is to establish probable cause against the defendant). Similarly, if Mack's testimony was discredited at trial, then the jury would be more likely to find defendant not guilty of those charges. See *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) (explaining that witness credibility is a question for the jury). Concerning the second factor, the nature of the two proceedings—both what is at stake and the applicable burden of proof, the two proceedings had nearly identical risks at stake. In each proceeding, defendant would be free from criminal punishment if the charges against him were not sufficiently proven. Although the applicable burdens of proof obviously were different, this fact is not dispositive, given that the "burden of proof" question is only one subpart of the entire *Farquharson* test. Concerning the third factor,

---

[2] Also on appeal, however, defendant argues that Michigan courts have erred by indicating that the term "unavailable" has the same meaning for the purposes of the Confrontation Clause and the rules of evidence. Defendant is correct that the term has different meanings, see *United States v Shayota*, 934 F3d 1049, 1053 (CA 9, 2019) (O'Scannlain, J., *concurring*), but that argument is not relevant here because defendant concedes that Mack was unavailable in any event.

whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities), it is undisputed that defendant did cross-examine Mack at the preliminary examination. And there is nothing in the record to suggest that the preliminary examination was unduly limited in this regard. Therefore, application of the *Farquharson* factors leads to the conclusion that defendant had a "similar motive to develop the testimony by direct, cross, or redirect examination" under MRE 804(b)(1). Mack's testimony was thus admissible under that rule of evidence.

Accordingly, the admission of Mack's testimony did not violate the Confrontation Clause or MRE 804(b)(1). As a result, regardless of whether defense counsel properly objected on these grounds at trial and the issues are deemed preserved or unpreserved, the issues are meritless. Further, because defense counsel cannot be deemed ineffective for failure to raise a futile objection, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), defendant's accompanying ineffective-assistance claim is meritless as well.

## B.  CLOSING ARGUMENT

Defendant next contends that error occurred when the prosecutor argued in the closing, and again during rebuttal, that Mack did not testify at trial because he was scared. Relatedly, defendant argues that defense counsel was ineffective for failing to object at the time. We agree that an error occurred, but conclude that it was not "plain," and further, that the error did not prejudice defendant for the purposes of his ineffective-assistance claim.

When a defendant fails to object to an alleged prosecutorial error, the claim is reviewed for plain error affecting substantial rights. *People v Thomas*, 260 Mich App 450, 454; 678 NW2d 631 (2004).

"Given that a prosecutor's role and responsibility is to seek justice and not merely convict, the test for prosecutorial [error] is whether a defendant was denied a fair and impartial trial." *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Prosecutorial comments must be read as a whole and evaluated in light of defense arguments and the relationship they bear to the evidence admitted at trial." *People v Caddell*, 332 Mich App 27, 71; 955 NW2d 488 (2020) (quotation marks and citation omitted). Prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995) (cleaned up). Prosecutors may not misstate the evidence. See *People v Byrd*, 133 Mich App 767, 780; 350 NW2d 802 (1984).

In this case, there is nothing in Mack's preliminary examination testimony to clearly indicate that he did not testify at the subsequent trial because he was scared. Nor is there anything else in the record to clearly indicate that Mack did not testify at trial because he was scared. Thus, we conclude that the prosecutor erred by misstating the evidence. However, to be entitled to relief under the plain-error standard, the error must be "plain, i.e., clear or obvious." *Carines*, 460 Mich at 763. The error here was not "plain" because Mack did testify at the preliminary examination that he has PTSD and is afraid to leave the house after the shooting. Thus, there is some evidence that Mack was "scared," at least in the abstract. Moreover, the female victim testified at trial that she did not want to be in the courtroom that day because "I'm just scared of him." The evidence therefore showed that Mack was scared in general, and the female victim was scared of testifying

at trial because of defendant in particular. Taken together, it is reasonable to infer that Mack did not testify at trial because he was also scared of defendant in particular. At a minimum, given these two facts in evidence, the prosecutorial error during closing argument was not "plain, i.e., clear or obvious." See *Carines*, 460 Mich at 763.

Defendant alternatively argues that defense counsel was ineffective for failure to object at trial. "[E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *People v Randolph*, 502 Mich 1, 9; 917 NW2d 249 (2018). "Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citations omitted). Here, even if defense counsel was ineffective for failure to object at trial, it did not prejudice defendant. As discussed, there was evidence that one witness, the female victim, was afraid to testify at trial because she was "scared" of defendant. Further, Mack himself testified at the preliminary examination that he generally was afraid after the shooting. The jury likely would have inferred for itself that Mack would have similarly been afraid to testify at trial because of defendant. Thus, while the specific allegation referenced by the prosecutor—that Mack outright refused to testify at trial because he was scared of defendant—is unsupported by the record, the record fairly suggests something similar. In light of this fact, there is no reasonable probability that the failure to object would have changed the outcome of trial, particularly in light of the fact that defendant's identity as the shooter was corroborated by both Mack's and the female victim's testimony, and by their respective 911 calls, about the shooting that day.

## C. LAY OPINION TESTIMONY

Defendant argues that admission of Michigan State Police Trooper Faucette's testimony concerning alleged fugitives from justice violated MRE 701 and 702, MRE 401, and MRE 403, and that defense counsel was ineffective for failure to object at trial. We agree that the testimony nominally violated MRE 701 and 702 but conclude that the error was not prejudicial for the purposes of plain error or ineffective assistance of counsel.[3]

MRE 701 governs lay opinion testimony and provides:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

MRE 702, which governs expert testimony, provides:

---

[3] Our Supreme Court has not precisely compared the meaning of the term "prejudice" for the purposes of plain error and ineffective assistance but has suggested that the term has similar meanings in each context. See *Randolph*, 502 Mich at 8 n 7.

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Generally, when a witness provides opinion testimony on the basis of his or her knowledge, experience, and training, it constitutes expert testimony that must be admitted under MRE 702. See *Dobek*, 274 Mich App at 77 ("Because Leach was testifying about delayed disclosure on the basis of his knowledge, experience, and training, it would appear that his testimony constituted expert opinion testimony and not lay opinion testimony under MRE 701 . . . ."). On the other hand, opinion testimony that does "not involve highly specialized knowledge, and [is] largely based on common sense" is admissible under MRE 701. *People v McLaughlin*, 258 Mich App 635, 658; 672 NW2d 860 (2003).

Here, defendant challenges Faucette's testimony that in his experience, "subjects that we've been looking for for an extended period of time they know we are looking for them and they are not found. We don't typically find them with weapons or particular anything weapon related to, to the incident that were [sic] after them for." The first sentence arguably violated MRE 701 and 702 because Faucette was essentially testifying that in his opinion, based on his experience with the "fugitive team," that subjects who have not been apprehended after an extended period of time know law enforcement is searching for them. Because this opinion was based on his specialized experience, he should have been qualified as an expert beforehand under MRE 702.

The second sentence, however, did not violate MRE 701 and 702 because it was not an "opinion." Rather, it was a simple statement of fact that in his experience, subjects who are not apprehended after an extended period of time are ultimately not apprehended in possession of the weapon used in the alleged crime. It would be akin to a police officer testifying to the simple fact that in his experience, a majority of assaultive incidents are not captured on camera. No expert qualification would be necessary for such testimony because it is not an opinion. Rather, it is a statement of fact that in the cases in which the testifying police officer has been involved, a particular circumstance is not present. This is the case here too.

Assuming that the first sentence of Faucette's testimony was erroneously admitted under MRE 701 and 702 as improper lay opinion testimony, and assuming that it was plainly erroneous and that defense counsel was ineffective for failure to object, the evidence was not "prejudicial" for the purposes of plain error or ineffective assistance. The sentence was given in passing and not referenced by the prosecutor during closing argument or in rebuttal. Additionally, as the trial court correctly noted in its opinion and order denying the motion for a new trial:

[T]he Court does not see how the trooper's not telling the jury that subjects for whom the team is looking over an extended period of time know the team is looking for them would have changed the verdict. To be straight here . . . it is really not a great stretch or leap for the jury to pick up on its own the notion that subjects who know that a fugitive team is looking for them could take an extended period of time

-7-

for the team to find (even supposing that confirmation of same may have required the application of the trooper's specialized skill, knowledge, or experience). [Ellipses in original.]

We agree with this reasoning. Accordingly, Faucette's testimony concerning subjects' knowledge of the fact that law enforcement is searching for them was not prejudicial for the purposes of the plain-error standard, see *Carines*, 460 Mich at 763. Nor is there a reasonable probability that it affected the outcome of trial for the purposes of the ineffective-assistance claim, see *Randolph*, 502 Mich at 9.

## D. EVIDENCE OF FLIGHT INSTRUCTION

Defendant argues that the trial court abused its discretion by giving the jury M Crim JI 4.4, the evidence of flight instruction. We disagree.

"We review a claim of instructional error involving a question of law de novo, but we review the trial court's determination that a jury instruction applies to the facts of the case for an abuse of discretion." *People v Dupree*, 486 Mich 693, 702; 788 NW2d 399 (2010). When the trial court errs in instructing the jury, "[t]he defendant's conviction will not be reversed unless, after examining the nature of the error in light of the weight and strength of the untainted evidence, it affirmatively appears that it is more probable than not that the error was outcome determinative." *People v Riddle*, 467 Mich 116, 124-125; 649 NW2d 30 (2002).

"A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Id.* at 124. "Jury instructions must therefore include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence." *People v Fennell*, 260 Mich App 261, 265; 677 NW2d 66 (2004). "[A] trial court is required to give requested instructions only if the instructions are supported by the evidence or the facts of the case." *People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998).

"It is well established in Michigan law that evidence of flight is admissible." *People v Coleman*, 210 Mich App 1, 4; 532 NW2d 885 (1995). "Such evidence is probative because it may indicate consciousness of guilt, although evidence of flight by itself is insufficient to sustain a conviction." *Id*. "The term 'flight' has been applied to such actions as fleeing the scene of the crime, leaving the jurisdiction, running from the police, resisting arrest, and attempting to escape custody." *Id*. (citation omitted).

M Crim JI 4.4 provides as follows:

**Flight, Concealment, Escape or Attempted Escape**

(1) There has been some evidence that the defendant [tried to run away / tried to hide / ran away / hid] after [the alleged crime / (he / she) was accused of the crime / the police arrested (him / her) / the police tried to arrest (him / her)].

(2) This evidence does not prove guilt. A person may run or hide for innocent reasons, such as panic, mistake, or fear. However, a person may also run or hide because of a consciousness of guilt.

-8-

(3)   You must decide whether the evidence is true, and, if true, whether it shows that the defendant had a guilty state of mind.

The trial court did not abuse its discretion by giving the evidence of flight instruction to the jury. Faucette testified that he could not locate defendant "at the warrant address or any of the known areas" and that defendant was ultimately apprehended after about six weeks. As the trial court explained when it decided to give the instruction over defendant's objection, "you could probably draw the conclusion that if you are not in locations where you are known to live that you are probably choosing a location where you don't live where it would be difficult, more difficult, to find you." This certainly was one reasonable view of the evidence, namely, that defendant chose to temporarily reside at a location where he would be less likely to be located by law enforcement after he committed the crimes at issue in early December 2018. Michigan law recognizes such conduct as potentially probative of guilt. See *Coleman*, 210 Mich App at 4. Further, although it was not necessarily probative of guilt because, as defendant argues, the evidence at trial indicated that he simply had unstable housing, the trial court only was required to consider whether the instruction was "supported by the evidence or the facts of the case." *Ho*, 231 Mich App at 189. The instruction was supported by some of the evidence, even if there was also some evidence weighing against it.

Accordingly, the trial court did not abuse its discretion by giving the jury M Crim JI 4.4, the evidence of flight instruction.

## E.  CRUEL AND/OR UNUSUAL PUNISHMENT

Defendant argues that his 25-year mandatory minimum sentence, see MCL 769.12(1)(a), violates both the federal and state constitutional prohibitions against cruel and/or unusual punishment. We disagree.

Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.[4]

The United States Constitution prohibits "cruel and unusual punishments." US Const, Am VIII. The Michigan Constitution prohibits "cruel or unusual punishment." Const 1963, art 1, § 16. The state constitutional prohibition is broader than its federal counterpart, and a penalty that is "unjustifiably disproportionate to the crime for which it is imposed" violates the state constitutional prohibition. *People v Bullock*, 440 Mich 15, 30; 485 NW2d 866 (1992). To

---

[4] Defendant argues the issue is preserved because he timely moved for resentencing. This is incorrect. A motion for resentencing only preserves a challenge to the scoring of the guidelines range. See *People v Kimble*, 470 Mich 305, 309; 684 NW2d 669 (2004). To preserve a constitutional challenge to a sentence, the issue must be raised at sentencing. See *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). Defendant did not raise a constitutional issue at sentencing. This issue is not preserved. In any event, the standard of review would not affect the outcome of this issue.

-9-

determine whether a sentence is unjustifiably disproportionate, Michigan courts consider the following four factors:

> (1) the severity of the sentence imposed compared to the gravity of the offense, (2) the penalty imposed for the offense compared to penalties imposed on other offenders in the same jurisdiction, (3) the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, and (4) whether the penalty imposed advances the penological goal of rehabilitation. [*People v Carp*, 496 Mich 440, 520; 852 NW2d 801 (2014).]

To determine whether a sentence violates the Eighth Amendment because it is "grossly disproportionate," the following three factors should be considered: (1) "the gravity of the offense [compared to] the severity of the sentence," (2) "the defendant's sentence [compared to] the sentences received by other offenders in the same jurisdiction," and (3) "the defendant's sentence [compared to] . . . the sentences imposed for the same crime in other jurisdictions." *Graham v Florida*, 560 US 48, 60; 130 S Ct 2011; 176 L Ed 2d 825 (2010). "If a punishment passes muster under the state constitution, then it necessarily passes muster under the federal constitution." *Benton*, 294 Mich App at 204 (quotation marks and citation omitted).

In *People v Burkett*, 337 Mich App 631; 976 NW2d 864 (2021), this Court rejected the defendant's facial challenge to MCL 769.12(1)(a) under both the federal and state constitutions. *Id*. at 637-638. This Court reasoned that the 25-year mandatory minimum was "not an unduly harsh punishment" in light of the repeat felony convictions, *id*. at 638, the fact that Michigan has other substantial mandatory minimums, *id*. at 639 n 4, and the fact that the habitual-offender laws in other states, such as California, do not "indicate that the penalty imposed by MCL 769.12 is abnormally harsh in comparison," *id*. at 640.

In this case, it is unclear whether defendant is raising a facial challenge to MCL 769.12(1)(a) or an as-applied challenge to that statute. To the extent that defendant raises a facial challenge to that statute, his argument is foreclosed by *Burkett*. To the extent that defendant raises an as-applied challenge, his argument is meritless. The analysis begins, and ends, with application of the *Carp* factors, which concern the heightened state constitutional prohibition against cruel or unusual punishment.

With regard to the first *Carp* factor, the severity of the sentence imposed compared to the gravity of the offense, the 25-year mandatory minimum may be considered relatively harsh. However, defendant was convicted of assault with intent to do great bodily harm, first-degree home invasion, and discharge of a firearm in a dwelling, among other offenses. In other words, his present convictions involve violence. They are not mere property crimes. In addition, defendant previously was convicted of breaking and entering an occupied dwelling with intent, unarmed robbery, possession of cocaine (50 to 224 grams), and possession of cocaine (less than 25 grams). It is clear that defendant is a repeat offender during his adult life. Further, while defendant argues that it is unreasonable to rely upon his unarmed-robbery conviction to enhance his sentence here because that conviction was for a crime committed when he was 17 years old, as the present circumstances illustrate, that unarmed robbery was not an isolated teenage incident. Rather, it was the beginning of a lifetime pattern of criminal activity.

As to the second *Carp* factor, the penalty imposed for the offense compared to penalties imposed on other offenders in the same jurisdiction, defendant does not develop any argument. However, it is noted that the 25-year mandatory minimum sentence imposed on defendant is identical to the 25-year mandatory minimum for a single offense of first-degree criminal sexual conduct committed by an individual 17 years of age or older against an individual under 13 years of age. See MCL 750.520b(2)(b). In addition, the 25-year mandatory minimum is comparable to the 270-month minimum guidelines range for a non-habitual offender who commits a Class A offense and has the maximum amount of points contemplated by the OV and PRV variables. See MCL 777.62. Class A offenses include assault with intent to murder. See MCL 777.16d. Thus, if defendant had been convicted of assault with intent to murder as charged and had an additional 15 points scored for the OV variables,[5] his guidelines range would have provided for a 270-month minimum—even without considering his habitual-offender status. Simply, the 25-year mandatory minimum under MCL 769.12(1)(a) is similar to what other non-habitual offenders would likely receive if they committed crimes comparable to defendant's crimes.

In regard to the third *Carp* factor, the penalty imposed for the offense in Michigan compared to the penalty imposed for the same offense in other states, defendant has merely contrasted MCL 769.12(1)(a) with California's "three strikes" law that was upheld in *Ewing v California*, 538 US 11; 123 S Ct 1179; 155 L Ed 2d 108 (2003). As defendant notes, the California law, unlike MCL 769.12(1)(a), requires the prior felonies to be "serious" or "violent." See *id.* at 15. In addition, California courts have the discretion to vacate prior felonies. *Id.* at 17. In *Burkett*, however, this Court discussed *Ewing* at length and concluded that MCL 769.12(1)(a) is sufficiently similar to the California law to be upheld against a constitutional challenge, explaining that "Michigan, like California, has an interest in incapacitating and deterring recidivist felons." *Burkett*, 337 Mich App at 642 (quotation marks and citation omitted). Defendant has offered no reason to deviate from that conclusion here.

The fourth *Carp* factor considers whether the penalty imposed advances the penological goal of rehabilitation. While a 25-year mandatory minimum likely is longer than necessary to achieve that goal, the habitual-offender statutes such as MCL 769.12(1)(a) also serve the goals of incapacitation and deterrence of recidivist felons. See *Burkett*, 337 Mich App at 642. Thus, the fourth *Carp* factor is not dispositive.

Accordingly, MCL 769.12(1)(a) is not "cruel or unusual punishment" as applied to defendant for the purposes of Const 1963, art 1, § 16. It follows that MCL 769.12(1)(a) is not "cruel and unusual" as applied to defendant for the purposes of the Eighth Amendment. See *Benton*, 294 Mich App at 204. Further, to the extent that defendant intends to raise a facial challenge to MCL 769.12(1)(a) under one or both of those constitutional provisions, that argument is foreclosed by *Burkett*.

## II.  STANDARD 4 BRIEF

### A.  INEFFECTIVE ASSISTANCE

---

[5] The original PSIR for defendant indicated a PRV score of 115 and an OV score of 85.

In his Standard 4 brief, defendant argues that his defense counsel was ineffective in numerous respects not identified by his appellate counsel. We disagree.

To preserve an issue of ineffective assistance of counsel, a defendant must timely file a motion for a new trial raising that issue. *People v Wilson*, 242 Mich App 350, 352; 619 NW2d 413 (2000). Here, defendant, through his appellate counsel, filed a motion for a new trial raising largely the same issues raised in his brief on appeal. This issue is arguably preserved for review. "However, because the trial court did not hold an evidentiary hearing, our review is limited to the facts on the record." *Id.* at 352. "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Swain*, 288 Mich App at 643 (quotation marks and citation omitted).

"[E]stablishing ineffective assistance requires a defendant to show (1) that trial counsel's performance was objectively deficient, and (2) that the deficiencies prejudiced the defendant." *Randolph*, 502 Mich at 9. "Prejudice means a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quotation marks and citations omitted).

Defendant argues that defense counsel was ineffective because she failed to file the following motions in compliance with defendant's wishes: (1) a motion for an evidentiary hearing to determine the physical evidence in possession of the prosecutor, including a bullet found in a wall, blood samples, and pictures of the house, and whether the female victim told the police that defendant was wearing a gray hoodie when he committed the alleged offenses; (2) a motion for a bill of particulars to detail the 17 charges against defendant; (3) a motion for a ballistics expert who could testify that the alleged shooting could not have happened in the manner suggested by Mack; (4) a motion for a toxicology expert who could testify that Mack had illegal substances in his system; and (5) a motion for a private investigator who could determine who actually shot Mack.

Each of these proposed motions is meritless. First, the argument that defense counsel should have filed a motion "to see what evidence state had, and challenge it" is unsupported by the record. The record indicates that the prosecutor disclosed multiple pieces of evidence to defendant, including, for example, "Redacted Med Records-Mack." Presumably, the prosecutor did so to comply with its duties under *Brady v Maryland*, 373 US 83; 83 S Ct 1194; 10 L Ed 2d 215 (1963). Defendant has presented no evidence that the prosecutor violated *Brady* by withholding any exculpatory evidence. Second, a motion for a bill of particulars was unnecessary because defense counsel was present at the preliminary examination and presumably had a transcript of that proceeding, so she was "thus was fully informed of both the nature and the elements of the charges against [defendant]." *People v Jones*, 75 Mich App 261, 270; 254 NW2d 863 (1977). Third, defendant has presented nothing more than speculation that a ballistics expert could have shown that the bullets were fired from outside the house as he claimed, not from the doorway as the prosecutor claimed. "[T]he defendant's bare assertion that an expert would be beneficial cannot, without more, entitle him or her to an expert . . . ." *People v Kennedy*, 502 Mich 206, 226; 917 NW2d 355 (2018). Fourth, although defendant summarily claims in his Standard 4 brief that "trial lawyer and I seen cocaine strains in Macks toxicology report," defendant has not

-12-

shown that expert witness testimony concerning the alleged fact that Mack had cocaine in his system when he was treated at the hospital rendered the trial "fundamentally unfair." See *id*. at 227. This was an incidental fact, and defendant has not shown that, for example, an expert witness could have testified that Mack's visual identification of defendant as the shooter should be disregarded. Finally, defendant has presented nothing more than speculation regarding a private investigator and how such an individual could have proven that defendant was innocent. See *id*. at 226.

Defendant next argues that defense counsel was ineffective because she failed to investigate the following: (1) defendant's phone records, which would have proved that defendant went to the female victim's house because the children were close to being suspended from school; and (2) defendant's text messages, which would have proved that the female victim knew the men in the car who shot Mack and that the female victim was biased against defendant. However, defendant did not present this Court with evidence of his phone records or text messages. Thus, he has failed to meet his burden of showing prejudice. See *Randolph*, 502 Mich at 9. In other words, defendant has not shown that his phone records or text messages, or both, would have aided his case.

Defendant argues that defense counsel was ineffective because she failed to impeach the witnesses in the following respects: (1) the female victim testified at trial that the gun was black but testified at the preliminary examination that the gun was silver; (2) the female victim told the police that defendant was wearing a gray hoodie but testified at trial that he was wearing a brown coat; (3) the female victim testified that she did not get "high" on the day of the shooting, but police found marijuana on a table inside the house; (4) the female victim testified that she spent the previous night with defendant but told the police that she went out with friends that night; (5) Mack told 911 that defendant shot him but testified at the preliminary examination that he did not see defendant shoot him; (6) the female victim testified at trial that she exited out the door after the shooting but told the police that she ran to the back of the house; (7) Detective Willoughby was not called by the prosecutor to rebut the female victim's and Mack's perjury despite the fact that he could have done so; (8) the female victim testified that she lost custody of the children because of defendant, when CPS records showed that she had an ongoing abuse/neglect case with CPS when the shooting occurred; and (9) Detective Rowell testified that he investigated an abandoned house and garage, when his police report indicated that the house and garage was not abandoned.

Each of these arguments is meritless. First, defense counsel did impeach the female victim with the fact that she previously said that the gun was silver, whereas she testified at trial that the gun was black. Second, defense counsel impeached the female victim by having her admit at trial that she was uncertain what defendant was wearing at the time of the shooting. Third, the female victim did not testify that she was not "high" at the time of the shooting, so there was nothing to impeach. Fourth, defense counsel impeached the female victim with the fact that she spent the night before the shooting with defendant but did not admit that fact to the police during the investigation. Fifth, there is nothing inconsistent with Mack telling 911 that defendant shot him, but testifying at the preliminary examination that he did not see the gun. Mack easily could have inferred that defendant shot him, given the location of the gunfire. Sixth, there is nothing in the record to suggest that the female victim told the police that she ran to the back of the house immediately after the shooting. Seventh, while defendant argues that Detective Willoughby could

have proven that the female victim committed perjury as outlined earlier in this paragraph if he was called to testify, as explained, the female victim was confronted with and admitted any previously inconsistent statements. Eighth, defendant has not proven that the female victim committed perjury when she testified that the shooting caused her to lose custody of her children. Defendant has only provided this Court with a September 2020 DHHS letter indicating that an abuse and neglect case against her was "investigated and denied." As this September 2020 letter was written several months after trial, it is unclear how it proves that the female victim committed perjury at trial. Ninth, while it is somewhat unclear whether the garage where the alleged assault of the female victim occurred was "abandoned" or not at the time, Detective Rowell explained on cross-examination that he did perform an investigation to determine whether it was abandoned, and the investigation was inconclusive.

Defendant argues that defense counsel was ineffective for these additional reasons: (1) she failed to obtain full discovery for impeachment purposes; (2) she never showed defendant the discoverable evidence; (3) she never reviewed the habitual guidelines range with defendant; (4) she never explained the potential sentence confronting defendant if he proceeded with trial; (5) she never prepared a defense with defendant; (6) she never reviewed the transcripts of the preliminary examination with defendant; (7) she failed to move for a mistrial or an acquittal on the basis of false evidence and perjury; and (8) she failed to seek an interlocutory appeal to challenge the trial court's decisions to not dismiss the charges, allow the prosecutor to present an untimely noticed witness, and allow the prosecutor a two-week extension.

All of these arguments are meritless. First, defendant has not shown that defense counsel failed to obtain "full discovery" from the prosecutor. Second, even assuming that defense counsel was constitutionally required to personally show defendant the discoverable evidence, defendant has not shown that she failed to do so. Third and fourth, the transcript of the February 11, 2020 pretrial hearing shows that defense counsel did review the potential sentencing consequences with defendant. Fifth, defendant has not shown that defense counsel failed to prepare a defense with him. To the contrary, his Standard 4 brief clearly implies that defense counsel discussed the case with him in detail before trial. Sixth, defendant has not shown that defense counsel never reviewed the transcripts of the preliminary examination with him. Seventh, as explained *supra*, defendant has not shown that the prosecutor relied upon false evidence and perjury, so there was no reason for defense counsel to move for a mistrial on that basis. Eighth, defendant has not shown that an interlocutory appeal to challenge any of the trial court's pretrial decisions would have been successful.

Finally, defendant argues that defense counsel also failed to provide effective assistance in the following respects: (1) she never informed defendant about how he may be found guilty of a lesser charge even if acquitted of a greater charge; (2) she never informed defendant that Mack's preliminary examination testimony could be read to the jury or that the female victim could not be impeached; and (3) she never informed defendant that the prosecutor had physical evidence against him or that he could be convicted of some charges but acquitted of others. According to defendant, he would have accepted the prosecutor's plea offer if he had been aware of these facts. It is true that counsel may be ineffective for failure to give proper advice as to whether a plea offer should be accepted. See *People v Douglas*, 496 Mich 557, 593; 852 NW2d 587 (2014). However, defendant has not shown, through affidavit or otherwise, that defense counsel actually failed to give him proper advice as he claims in his Standard 4 brief. To the contrary, the transcript of the

-14-

February 11, 2020 pretrial hearing indicates that defense counsel discussed the benefits and drawbacks of accepting the plea offer with defendant, as well as the "likely" outcomes of trial, and defendant himself chose to go to trial. There is no reason to award defendant relief on this basis.

## B. VERDICT FORM

Defendant argues that the verdict form for Count 1 in LC No. 19-044736-FC was defective, and that defense counsel was ineffective for failing to raise this issue. We disagree. "A claim of ineffective assistance of counsel is a mixed question of law and fact. A trial court's findings of fact, if any, are reviewed for clear error, and this Court reviews the ultimate constitutional issue arising from an ineffective assistance of counsel claim de novo." *Swain*, 288 Mich App at 643 (quotation marks and citation omitted).

In *People v Wade*, 283 Mich App 462; 771 NW2d 447 (2009), the jury was given a verdict form that offered the jury the following options for Count 1: "not guilty" or "guilty" of first-degree murder; "guilty" of second-degree murder; or "guilty" of involuntary manslaughter. *Id.* at 465. The defendant was found guilty of involuntary manslaughter, but this Court reversed, explaining that the verdict form "did not give the jury the opportunity to return a general verdict of not guilty." *Id* at 468. This Court added that "the verdict form would not have been defective if it had included a box through which the jury could have found defendant not guilty of second-degree murder and not guilty of involuntary manslaughter." *Id*. at 468.

In this case, the verdict form for Count 1, which was titled "Assault with Intent to Murder," reflected the following three options: "not guilty," "guilty as charged of assault with intent to murder," or "guilty of the lesser offense: assault with intent to do great bodily harm less than murder." This was proper because the jury was given the opportunity to return a "general verdict of not guilty." There was nothing within the verdict form that was legally incorrect or misleading. Any objection by defense counsel would have been futile, and counsel cannot be ineffective for failure to raise a futile objection. *Ericksen*, 288 Mich App at 201.

## C. PROSECUTOR MISCONDUCT

Defendant raises numerous additional claims of prosecutorial misconduct. These all are meritless. Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Defendant argues that the prosecutor failed to disclose exculpatory evidence in several respects. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *People v Chenault*, 495 Mich 142, 149; 845 NW2d 731 (2014) (quotation marks and citation omitted). "[T]he components of a 'true *Brady* violation,' are that: (1) the prosecution has suppressed evidence; (2) that is favorable to the accused; and (3) that is material." *Id*. at 150. The defendant bears the burden of showing these elements. See *People v Schumacher*, 276 Mich App 165, 177; 740 NW2d 534 (2007). As previously noted, defendant failed to show that the prosecutor did not disclose any exculpatory evidence as required by *Brady*. He merely claims that the prosecutor failed to do so, but he does not support these claims with anything in the record.

-15-

Defendant next argues that the prosecutor relied upon false testimony and introduced false evidence. "It is well settled that a conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). "If a conviction is obtained through the knowing use of perjured testimony, it must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury." *Id*. (quotation marks and citation omitted). The same principles apply with regard to the use of false evidence. See *People v Lester*, 232 Mich App 262, 276; 591 NW2d 267 (1998).

Most of the allegations raised by defendant, as previously explained, do not show the existence of perjury or false evidence. The only allegations we have not addressed *supra* concern the following: (1) blood samples from the house that were never sent to a forensics unit; and (2) a bullet found in the house, which apparently was used in the shooting, but that never was sent to a forensic unit. Defendant is correct that these two pieces of evidence were not sent to a forensics unit, but this is not relevant. As an initial matter, the fact that neither of these pieces of evidence was sent to a forensics unit does not show that either one was falsified. More importantly, there is no significance to the fact that neither piece was sent to a forensics unit. It never was disputed that Mack bled inside the house, nor was it disputed that he was shot inside the house. Thus, testing the blood or the bullet found in the house would not have proven or disproven anything of relevance.

Finally, defendant argues that the prosecutor misled the jury during closing argument and improperly bolstered the female victim's testimony. Prosecutors are "free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *Bahoda*, 448 Mich at 282 (cleaned up). "[T]he prosecutor cannot vouch for the credibility of his witnesses to the effect that he has some special knowledge concerning a witness' truthfulness." *Id*. at 276. The only allegation here that has not yet been addressed *supra* is defendant's allegation that the prosecutor misled the jury during closing argument when she said that defendant assaulted the female victim on December 5 because she "talked to the police about what he did and he was mad," and that he was guilty of assault with intent to do great bodily harm because "he was mad at her because she talked to the police." Neither of these statements was improper. Given that the female victim was allegedly assaulted by defendant less than two days after the shooting occurred, and it is undisputed that she talked to the police about the shooting shortly after it occurred, it is reasonable to infer that defendant knew that she talked to the police and was angry about it.[6] The prosecutor was permitted to argue that reasonable inference from the evidence.

## D. AMENDED JUDGMENT OF SENTENCE

Defendant argues that the trial court erred by amending the April 2020 judgment of sentence for LC No. 19-044736-FC in May 2020 and August 2020, respectively, sua sponte. Defendant also argues that his unarmed-robbery conviction should not be counted for his habitual-offender status because that offense was committed when he was 17 years old. We disagree.

---

[6] In particular, it is reasonable to infer that defendant knew, or at least suspected, that she talked to the police because he was familiar with the neighborhood, and the police investigation of the house after the shooting would have been clearly apparent to everyone in the neighborhood.

Unpreserved issues are reviewed for plain error affecting substantial rights. *Carines*, 460 Mich at 763.

Previously, MCR 6.429(A), which concerned the trial court's authority to modify a sentence, provided that "[a] motion to correct an invalid sentence may be filed by either party. The court may correct an invalid sentence, but the court may not modify a valid sentence after it has been imposed except as provided by law." In *People v Comer*, 500 Mich 278; 901 NW2d 553 (2017), our Supreme Court held that "MCR 6.429 authorizes either party to seek correction of an invalid sentence upon which judgment has entered, but the rule does not authorize a trial court to do so sua sponte." *Id*. at 297. "[T]he trial court's authority to correct an invalid sentence on its own initiative ends upon entry of the judgment of sentence. Thereafter, an invalid sentence may be corrected only upon the timely filing of a motion to correct an invalid sentence in accordance with MCR 6.429." *Id*. at 297-298.

Defendant is correct that under *Comer*, the trial court lacked the authority to sua sponte amend its judgment of sentence. However, in 2018, MCR 6.429(A) was amended to provide as follows:

> The court may correct an invalid sentence, on its own initiative after giving the parties an opportunity to be heard, or on motion by either party. But the court may not modify a valid sentence after it has been imposed except as provided by law. Any correction of an invalid sentence on the court's own initiative must occur within 6 months of the entry of the judgment of conviction and sentence.

The amended rule thus abrogates the *Comer* holding by providing that the trial court "may correct an invalid sentence" on its own initiative if the correction occurs "within 6 months of the entry of the judgment of conviction and sentence."

In this case, the judgment of sentence originally provided that Counts 2, 4, 6, 8, and 10—the felony-firearm counts—would be "concurrent to each other but consecutive to Ct. 3." It also originally provided that the sentence for discharging a firearm in a dwelling was subject to a maximum term of five years in prison. Both of these sentence aspects were invalid. With regard to the felony-firearm sentences, each felony-firearm sentence should have been consecutive with its respective predicate felony. See *People v Smith*, 506 Mich 1, 8; 954 NW2d 78 (2020). With regard to the sentence for discharging a firearm in a dwelling, that sentence should have been subject to a maximum term of at least 10 years in prison because defendant was a habitual offender. See MCL 750.234b(1) (providing that discharging a weapon in a dwelling is subject to a 10-year maximum); *People v McCuller*, 479 Mich 672, 678-679; 739 NW2d 563 (2007) (explaining that the habitual-offender statutes allow the trial court to extend the statutory maximum sentence). Because the sentence was invalid in both of these respects, the trial court was permitted to amend the original April 2020 judgment of sentence within six months after issuance to correct these invalidities. See MCR 6.429(A). The respective May 2020 and August 2020 amendments were

within this six-month period.  Therefore, the trial court did not err by amending the judgment of sentence.[7]

Defendant also briefly argues that the trial court should not have enhanced his sentence to a 25-year mandatory minimum under MCL 769.12(1)(a) because it relied upon his unarmed-robbery conviction, which was for an offense committed when he was 17 years old.  Effective October 1, 2021, the Legislature enacted "Raise the Age" legislation, which amended MCL 712A.3 to essentially provide that an individual must presumptively be tried as a juvenile if he or she was under the age of 18 when the crime was committed, whereas the statute previously provided that an individual would presumptively be tried as a juvenile if he or she was under the age of 17.  See 2019 PA 109.  Defendant's argument is meritless because MCL 712A.3(1) provides that the raised age limitation applies "[f]or an offense occurring on or after October 2, 2021 . . . ."  There is nothing to suggest that MCL 712A.3(1) is retroactive, and as the quote in the previous sentence illustrates, the statute is almost certainly prospective with regard to 17-year-old individuals.  Thus, the trial court did not plainly err by using the unarmed-robbery conviction to enhance defendant's sentence.

### III.  CONCLUSION

There were no errors warranting relief.  We affirm.

/s/ Michael J. Riordan
/s/ Mark T. Boonstra
/s/ Michael F. Gadola

---

[7] Defendant only argues that under *Comer*, the trial court lacked the authority to sua sponte amend the judgment of sentence after it was originally entered.  He does not raise any issue with notice under MCR 6.429(A).  Regardless, we note that any possible failure to give notice under that court rule was harmless error.  Changing the felony-firearm sentences to be consecutive with their respective predicate felonies, rather than the first-degree home invasion charge alone, did not extend the ultimate minimum or maximum term that defendant would spend in prison.  Nor did changing the discharging a firearm in a dwelling maximum sentence from five years to ten years affect the ultimate term that defendant would spend in prison—given that defendant was subject to a minimum term of 25 years in prison for assault with intent to do great bodily harm, the 10-year maximum, concurrent term for discharging a firearm in a dwelling would be served in any event.